LYNA KATHRYN JONES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 198-76.
United States Tax Court
T.C. Memo 1977-329; 1977 Tax Ct. Memo LEXIS 114; 36 T.C.M. (CCH) 1323; T.C.M. (RIA) 770329; September 22, 1977, Filed Herbert Shafer, for the petitioner. Albert L. Sandlin, for *115 the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax for the years and in the amounts as follows: Additions to the Tax, I.R.C. 1954 [1]
Income
Section
Section
Section Year
Tax
6653(a)
6651(a)(1)
6654
1969
$1,691.02
$ 84.55
$380.48
$ 53.43
1970
1,775.96
88.80
399.59
57.19
1971
2,030.00
101.50
456.75
64.96
1972
1,629.03
81.45
The issue for decision is whether amounts received by petitioner during the years here involved, other than the $9,000 of reported salary income in 1972, constituted taxable income or gifts. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is a single individual who resided in Atlanta, Georgia, on the date of the filing of her petition in this case. Petitioner did not file Federal income tax returns for the calendar years 1969, 1970 and 1971. For the calendar year 1972 petitioner filed an individual income tax return (Form 1040A) on *116 which she reported $9,000 as salary as manager of a retail store. Prior to 1969 petitioner had been employed as a bartender and cocktail waitress at various establishments in Atlanta, Georgia. During the period from January 21, 1969, through February 5, 1969, she was employed at the Carillon Hotel, Miami Beach, Florida, and received wages of $121.50. Sometime in February she left Miami and went to Las Vegas and attempted to find work in Las Vegas. She was unable to find work in Las Vegas which she was willing to take and sometime prior to July 1969 moved to Atlanta where she continued to live throughout the years here involved. In the latter part of 1969 or the early part of 1970, petitioner was in Fan and Bill's Restaurant and made the acquaintance of a married man (hereinafter referred to as James) who had a son and grandchild whose home was approximately 120 miles from Atlanta. Petitioner went with James to his hotel room and had sexual relations with him. On that occasion, James gave petitioner cash. Thereafter, whenever James came to Atlanta he would call petitioner and petitioner would join him in his hotel room and have sexual relations with him. On each occasion *117 that James was in Atlanta, he gave cash to petitioner. This relationship between petitioner and James continued throughout the year 1972. On occasions, in addition to giving petitioner money, James would buy shoes for petitioner on his charge account and other clothing, and on one occasion he bought her a beautiful dress.In December 1971, James gave petitioner as a Christmas present a ring for which he paid $450. In early 1972, James acquired a retail store in a suburb of Atlanta and petitioner became the manager of this store at a salary of $200 a week plus an agreement for a percentage of the profits. Petitioner continued in the employ of this store until August of 1973 when her work at the store terminated because she and James had a disagreement. During the period from the time petitioner met James throughout the year 1972, James would sometimes take petitioner out to restaurants to dine, but he never came to petitioner's apartment. On October 17, 1969, petitioner purchased a used 1969 Cadillac Coupe De Ville automobile and on April 20, 1970, she purchased a new 1970 Cadillac Coupe De Ville. On November 11, 1971, petitioner purchased a new 1972 Cadillac Sedan De *118 Ville and on June 23, 1972, purchased a used Triumph Spitfire Roadster. On July 17, 1972, petitioner purchased a used 1971 Toyota Corolla Sedan.
On two occasions petitioner filed loan applications with banks in Atlanta in which she stated her occupation as an interior decorator and a partner in a business known as Unique Interiors. During the years 1969 through 1972, petitioner had 2 safety deposit boxes which she closed in 1973. During the years here in issue petitioner maintained both a checking account and savings account at the National Bank of Georgia and a savings account at First Federal Savings and Loan Association in which she made deposits. Petitioner paid some of her bills with checks drawn on her checking account and made other payments and expenditures in cash. During the years here in issue, petitioner had small amounts of interest income from her savings account. The following schedule shows petitioner's total deposits in her bank accounts during the years 1969 through 1972 plus her cash and other expenditures, and her interest income, less non-income items received by petitioner, including withdrawals from her bank accounts during these years: 1969
1970
1971
1972
Total Deposits: National Bank of Georgia
- Checking Account
$ 2,478.70
$ 4,008.00
$ 4,149.95
$ 8,130.62
National Bank of Georgia
- Savings Account
1,134.80
First Federal Savings &
Loan
147.00
659.00
994.60
$ 3,613.50
$ 4,155.00
$ 4,808.95
$ 9,125.22
Add: Cash & Other Expenditures: Loan Repayments
$ 847.37
$ 2,500.26
$ 3,106.03
$ 4,109.56
Automobiles
5,100.00
2,113.00
3,559.31
2,628.00
Apartment Rental
1,444.00
2,304.00
2,430.00
2,484.00
Preferred Risk Insurance
409.82
399.03
435.64
Personal Living Expenses
3,786.50
4,410.00
4,600.50
4,487.50
Auto Repair
59.26
34.09
233.66
Taxes Withheld
1,575.00
FICA Tax
468.00
$14,791.38
$15,951.34
$18,937.91
$25,546.58
Interest Income
$ 9.86
$ 25.58
$ 29.27
$ 15.94
Less: Non-Income Items: Loan Proceeds
$ 4,760.00
$ 3,842.13
$ 5,207.83
$ 998.00
Savings Withdrawals
937.69
485.00
575.00
Check Withdrawals
1,896.39
4,396.29
3,911.29
8,101.49
Income Tax Refund
76.00
Insurance Proceeds
112.57
Excess of Deposits Plus
Expenditures Over
Non-Income Items
$ 7,131.15
$ 7,738.50
$ 9,250.49
$15,888.03
*119 Petitioner's first deposit in her checking account in the National Bank of Georgia was made on July 15, 1969, and was a cash deposit of $150. Of the total deposits petitioner made that year, only $43.70 was of checks. Of the total deposits made by petitioner during 1970 only $1,042.60 was of checks and in 1971 only $308.95 was of checks. Respondent in his notice of deficiency increased petitioner's reported income of $9,000 for the year 1972 by $6,888.03 and determined that during the years 1969 through 1971 when petitioner filed no Federal income tax returns that she had unreported income of $7,131.15, $7,738.50, and $9,250.49, respectively. He computed her tax by allowing the standard deduction in each year and one personal exemption. Respondent explained his computation by stating that in the absence of adequate records petitioner's taxable income had been computed by reference to bank deposits, cash payments, and personal and other non-deductible expenditures. Respondent determined that part of the underpayment of tax for each year was due to negligence and therefore determined an addition to tax under section 6653(a). He further determined that petitioner's failure *120 to timely file tax returns for the years 1969 through 1971 was not due to reasonable cause and therefore determined the addition to tax under section 6651(a)(1). Respondent further determined that petitioner underpaid her estimated tax for the years 1969 through 1971 and asserted the addition to tax under section 6654. Petitioner stipulated the accuracy of the bank deposits, expenditures, interest and non-income items, as determined by respondent. Her only contention here is that the amounts she received from James, after her relationship with him began, were gifts and not taxable income. OPINION Section 61(a) provides that except as otherwise provided in the revenue laws, gross income means all income from whatever source derived. Petitioner here has stipulated receipts of funds as determined by respondent and, therefore, except to the extent that she is able to show that these funds were received from a source which, under some provision of the Internal Revenue Code, causes the funds not to be income, her receipts are taxable income. The only argument that petitioner makes to justify her contention that the amounts she received and did not report as taxable income are not *121 income is that the amounts she received from James were gifts and, therefore, under the provisions of section 102(a), are not income. Initially, we point out that since petitioner, by her own testimony, did not meet James until the latter part of 1969 or the early part of 1970, the cash which she has admitted receiving in 1969 could not be explained as having been received from James. No explanation is offered by petitioner of the source of her receipts in 1969 except for the $121.50 she received as salary as a waitress in Miami. Respondent has determined that petitioner did not have adequate records from which to compute her taxable income, and petitioner has offered no evidence to dispute this conclusion. Under such circumstances, the use of a bank deposits plus non-deductible expenditures, minus non-income items method of computing a taxpayer's taxable income has been held to be proper. See , and cases there cited. It is clear, therefore, that petitioner has totally failed to show error in respondent's computation for the year 1969. Respondent in his brief argues at great length that the record *122 is sufficient to show that the money received by petitioner in the years 1970 and 1971 and the money she received in 1972 in excess of her salary did not all come from James but that, in fact, petitioner received funds from the practice of prostitution. Even though petitioner in 1969 had stated to an FBI agent that she was engaged in prostitution and in 1973 made a similar statement to a special agent of the Internal Revenue Service, at the trial she testified that, after she established her relationship with James, she was a "kept woman" and did not practice prostitution. Respondent vigorously argues that petitioner did during the entire period here involved practice prostitution and that James was merely one of the men with whom she practiced prostitution. James' testimony at the trial was evasive and in certain respects directly contradictory of an affidavit furnished to a special agent of the Internal Revenue Service. However, in our view, whether petitioner practiced prostitution during the period after her relationship with James began throughout the balance of the years here involved is immaterial to a proper determination of this case. Certainly the funds which James gave *123 to petitioner were not gifts within the meaning of the income tax statutes. James gave this cash to petitioner because petitioner had sexual relations with him when he was in Atlanta. In fact, petitioner herself testified that James "was getting his money's worth." Therefore, even if all the cash which petitioner received during the years here in issue came from James, it was not a gift within the meaning of section 102(a). James did not give money to petitioner from feelings of "detached and disinterested generosity, * * * out of affection, respect, admiration, charity or like impulses" as required under the holding of , in order for money or property received by a taxpayer to be a gift under section 102(a). From a review of the computation of petitioner's income as made by respondent, it appears that the ring James gave her in 1971 as a Christmas gift and the shoes, dress, and other clothing he purchased for her as "gifts" are not included in her taxable income. Therefore, we do not have to determine whether these items should properly be considered as gifts. On the basis of the record as a whole, we sustain *124 respondent's computation of petitioner's taxable income and income tax for each of the years here in issue. Petitioner stipulated that she filed no returns for the years 1969 through 1971 and offered no explanation of her total failure to keep records of her receipts other than the salary she received in 1972. Therefore, on the basis of this record, petitioner has totally failed to show error in respondent's determination of additions to tax under sections 6653(a), 6651(a)(1), and 6654. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩